RICHARD A. CORKUM, Individually and as President of the Court Clerks Benevolent Association, et al., Respondents, v RICHARD J. BARTLETT, as Chief Administrative Judge of the Unified Court System of the State of New York, Appellant. JAMES R. HANNON, Individually and as President of the New York State Supreme Court Officers Association, Intervenor-Respondent.

First Department, December 14, 1978

APPEARANCES OF COUNSEL

*Michael R. Juviler (Michael Colodner* and *John Eiseman* with him on the brief), attorney for appellant.

*Albert H. Blumenthal* of counsel *(Stephanie Hill* and *Geoffrey Mc. Johnson* with him on the brief; *Phillips, Nizer, Benjamin, Krim & Ballon,* attorneys), for respondents.

*Stephen J. Wiley* of counsel *(Roemer & Featherstonhaugh,* attorneys), for Civil Service Employees Association, Inc., *amicus curiae.*

## OPINION OF THE COURT

*Per Curiam.*

This is an appeal from a judgment of the Supreme Court, Special Term, Part I, entered in the office of the Clerk of the County of New York on November 1, 1978, in a proceeding pursuant to CPLR article 78.

The issue arose when the Chief Administrative Judge of the courts of the State of New York proposed a classification plan for nonjudicial employees of the court system. The petitioners are associations of court employees who brought on a CPLR article 78 proceeding to enjoin the Chief Administrative Judge, *inter alia,* from holding public hearings concerning the proposed classification of nonjudicial employees.

In 1977 a new section 28 to article VI of the New York State Constitution was adopted, becoming effective April 1, 1978. Subdivision a of section 28 constituted the Chief Judge of the Court of Appeals the Chief Judge of the State and authorized him to appoint a Chief Administrator of the courts with the advice and consent of the Administrative Board. The Chief Administrator was authorized to supervise the administration and operation of the Unified Court System and to be possessed of such powers and duties as may be delegated to

him by the Chief Judge and such additional powers as may be provided by law (NY Const, art VI, § 28, subd b). Subdivision c of section 28 authorizes the Chief Judge, after consultation with the Administrative Board, to establish standards and administrative policies for the court system which shall be submitted to the Court of Appeals, and after approval, promulgated by the court.

Special Term, in its decision, thoroughly analyzed the events prior to and subsequent to the enactment of section 28 of article VI of the State Constitution and the enabling revisions of the Judiciary Law which necessarily followed and concluded that the power over personnel practices had been so allocated as to indicate a legislative intent not to vest all the power in one official, and that the delegation complained of was an illegal delegation of power.

Subdivision b of section 28 provides that the Chief Administrator, on behalf of the Chief Judge, shall supervise the administration and operation of the Unified Court System, and shall be delegated certain powers by the Chief Judge in addition to the powers he has by law been imbued with. This is patently a broad mandate and one in which it is implicit that with his delegated and statutory powers he will make whatever plans may be required in the name of supervision of the administration and operation of the courts. Without more, the responsibilities of this office might well be relegated to an employee of lesser stature. In contemplation of the requirements of this position under the Constitution, the Legislature saw fit to clarify the statutory powers of the Chief Administrator by enacting section 212 of the Judiciary Law "Functions of the chief administrator of the courts". Under section 212 (subd 1, par [m]), the statute permits the Chief Administrator to "Undertake research, studies and analyses of the administration and operation of the unified court system including, but not limited to, the organization, budget, jurisdiction, procedure, and administrative, clerical, fiscal and personnel practices thereof." Under section 212 (subd 1, par [h]) the Chief Administrator may also hold hearings and conduct investigations. Special Term conceded that the Chief Judge could delegate certain of his powers regarding the formulation of a classification plan, but that the "responsibility of adoption" could not be delegated. We think it clear that from the wording of the statute and the Constitution, many, if not most, of the functions of the Chief Judge's office are properly

delegable. It is not conceivable that the Legislature intended to vest the Chief Judge with the responsibility for management of an operation of the magnitude of the State-wide court system and at once burden him with the minute detail of developing and adopting, among other things, a personnel classification plan when clearly the Constitution gives him the right to delegate such a duty. Inasmuch as the Chief Judge has authorized the hearings to be held, and actual implementation after collective bargaining and revision will be some time in the future, it is difficult to see how petitioners have been aggrieved at this stage. The question of final adoption also appears to be premature.

Accordingly, the judgment of the Supreme Court, New York County (BLOOM, J.), entered November 1, 1978, granting petitioners' application to enjoin the Chief Administrative Judge of the Courts of the State of New York from holding public hearings concerning the proposed classification of nonjudicial employees of the court system, from delegating or exercising any delegation of powers vested in the Chief Judge of the State, the Court of Appeals and the Administrative Board with respect to such proposed classification; from establishing any classification system or title standards for nonjudicial positions in the Unified Court System, and from implementing the classification system or plan of title standards for nonjudicial positions in the Unified Court System should be reversed on the law without costs and the petition dismissed. In order to give petitioners adequate time to prepare for the hearings, the hearings should not be held until after January 2, 1979.

LUPIANO, J. P., EVANS, MARKEWICH, SANDLER and SULLIVAN, JJ., concur.

Judgment, Supreme Court, New York County, entered on November 1, 1978, unanimously reversed, on the law, without costs and without disbursements, and vacated, and the petition dismissed. In order to give petitioners adequate time to prepare for the hearings, the hearings should not be held until after January 2, 1979.